## WASHINGTON v. UNIVERSAL LIFE INS. CO. *
### No. 4883.

Court of Appeal of Louisiana. Second Circuit.
Nov. 2, 1934.

* Rehearing denied December 5, 1934.

George Thurber, of Shreveport, for appellant.

Bryan E. Bush, of Shreveport, for appellee.

DREW, Judge.

Plaintiff alleged she was the beneficiary under a life insurance policy issued to her son, Rufus Lee Washington, on January 25, 1932, by the defendant company; that he died January 2, 1933, and under said policy she is entitled to receive as his beneficiary the sum of $210. She alleged proper notice to defendant and surrender of the policy, and that defendant had refused to pay her. Plaintiff prayed for judgment for the amount sued for, with interest, and for attorney's fees in the sum of $50.

Defendant admitted all the material allegations of the petition, but resists payment for the reason alleged that deceased was killed by police officers of the city of Shreveport on January 2, 1933, while in violation of the law in attempting to draw a weapon to shoot at said officers; that he was therefore killed while in open and actual violation of the laws of the city of Shreveport and the state of Louisiana.

The lower court rejected plaintiff's demands and she has appealed.

The policy of insurance provides that no benefits shall be paid for death resulting from injuries received while in the commission of crime or resisting officers of the law.

Section 1 of Act No. 77 of 1926 reads as follows:

"Be it enacted by the Legislature of Louisiana, That it shall be unlawful for any person when placed under arrest by any sheriff, deputy sheriff, constable, marshal or police officer of the State of Louisiana, or any of the cities, towns or villages of the state to refuse to accompany the said officer to the jail or prison or resist any officer or offer to use force to prevent the execution of such arrest."

There is very little dispute in the testimony as to the facts in the case. Deceased at the time of his death had a loaded automatic pistol in his possession and had drawn it from his pocket. This, in itself, was a violation of the law. Two policemen of the city of Shreveport had been informed that the now deceased negro was to meet another negro at the corner of Jewell and Christian streets for the purpose of going from there to hold up and rob a Highland street car. Street cars in the city had been robbed several times before. The policemen hid themselves near this point where the meeting was to take place and when the deceased, who fitted the description of the negro they expected to find there, came down Christian and turned into Jewell street, one of the officers stepped out in front of him, a distance of about thirteen feet threw the glare of his flash-light in deceased's eyes, and told him to "put up" his hands, take his hands out of his pocket, and that he was a police officer. The deceased attempted to get his pistol out of his pocket, but it hung in a torn place in the pocket. He continued to back away trying to extricate his pistol. The police officer told him the second time that he was a policeman and to put up his hands, without any response from the deceased, who finally caught his coat with one hand and jerked the pistol out of his pocket with the other, at which time the officers opened fire and killed him. There was no street light near the scene of the killing, but it was not dark enough to prevent the officers from distinguishing a negro from a white man, or from seeing the manner of dress the negro wore.

Clearly, the action of the insured negro was a violation of the law and of Act No. 77 of 1926, unless we can agree with the reasoning of the attorney for plaintiff, who contends that it is not shown that deceased knew he was being accosted by police officers and had a right to assume he was in the act of being robbed by highwaymen. This position might be tenable if it were not for the fact that the officers on at least two occasions warned him that they were policemen. He was within twelve or thirteen feet of the officers at the time and, unless he was hard of hearing, must certainly have heard them. It is not shown that his hearing was defective. It is barely possible that the deceased thought the policemen were highwaymen, but we do not think it probable. When the officer stepped out in front of him, threw the glare of the flash-light on him, and informed him twice that he was an officer of the law, there was nothing else for the officer to do. He did all that was possible for him to do to keep from killing the now deceased and the action of the deceased amounted to and was resisting arrest, and the beneficiary cannot recover.

The judgment of the lower court is correct and is affirmed, with costs.